BOWES, Judge,
dissenting.
I respectfully dissent from the majority opinion and would reverse the defendant’s conviction.
The constitutional standard for testing the sufficiency of evidence is enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt.
State v. Smith, 463 So.2d 16, 18 (La.App. 5th Cir.1985)
Further,
When circumstantial evidence is offered to establish the offense or any of its component elements, the Jackson test, supra, must be considered in light of R.S. 15:438, which mandates that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it [the circumstantial evidence] must exclude every reasonable hypothesis of innocence.
State v. George, 466 So.2d 678, 680 (La. App. 5th Cir.1985). It appears to me that my learned brethern in the majority failed to consider that the Jackson test must be considered in the light of State v. George, supra.
In the present case, I do not find that the evidence presented by the State meets either standard. The State failed to do any of the following: (1) establish a motive; (2) show the defendant was armed at any time; (3) produce a weapon even though the defendant’s home and car were searched within 24 hours of the shooting; (4) connect the defendant to any weapon; (5) offer any direct evidence which would place the defendant in the room with the victim at the time of the shooting; and, finally, (6) the State did not offer into evidence any statement from the victim as to the identity of his assailant, even though his doctor testified that, although the victim could not be moved from the hospital at the present time, he was able to communicate. Certainly some form of evidence from the victim identifying his assailant could have been produced; and, to me, this seems crucial in such a serious case involving no direct evidence at all as to whom the assailant was. In fact, in my opinion, the State’s failure to do so seems fatal.
The only direct evidence offered by the State was testimony by Cynthia Perez (whose husband, an alleged eye-witness to the shooting, could not be found at the time of trial), which placed the defendant and his wife walking toward the scene of the shooting — her apartment — from their car, just prior to the shooting. This testimony was disputed by both Hernandez and his wife who deny returning to the Perez apartment after leaving earlier that evening.
The remainder of the State’s case against the defendant was made up of the testimony of the investigating deputy, John Lati-more, and the testimony of the detective in charge of the case, Curtis Snow.
Under direct examination by the prosecutor, Deputy Latimore testified, thusly:
Q. Were you able to talk with them?
A. I had trouble talking with them because they were Spanish speaking, but there was a female there who did speak some English who could translate.
Q. You didn’t take any statements from them?
A. I just took a few, more or less, verbal statements as to what happened, but I didn’t take any written statements from them.
Q. And you waited for Detective Snow at that point?
A. Correct.
*1333 The female to whom he referred is none other than Cynthia Perez, who, by her own admission, was “upstairs hanging curtains” at the time of the shooting.
Detective Snow testified:
Q. Was there another officer on the scene when you arrived?
A. John Latimore.
Q. Did you receive any information from him before you processed the scene?
A. Well, as is the usual custom, once we arrive there, we ask the officer does he have any indication of what transpired, what happened with the shooting. He told me that he had been able to ascertain that a subject named Julio had come over to the residence and had been the perpetrator of the shooting, but he had fled and was wanted at that time.
Thus, up to this point, the only evidence connecting the defendant to the crime was the unsubstantiated testimony of Cynthia Perez, who admittedly hadn’t seen the shooting and whose now absent husband could easily be considered a suspect.
Detective Snow’s testimony continues:
Q. Okay, what did you do after you processed the scene?
A. Once again, we secured the services of the interpreter, I went back to the Detective Bureau, and, with the aid of the interpreter, we interviewed all the people involved that were witnesses to the shooting itself.
Q. Do you remember their names?
A. The people that were interviewed, sir?
Q. Yes.
A. Victor Sanchez, Victor Colon, Emer-io Perez, Cynthia Perez, and a Mr. Reyes, Juan Reyes.
It is evident that, at the crime scene, no direct communication was possible between the sheriff’s office and the alleged witnesses except through Mrs. Perez. Since this was admittedly the case, there was no way either the deputy or the detective could possibly have known if the statements being “related” by Mrs. Perez were in any way even close to the truth. One would also question her reliability as translator inasmuch as her husband was a possible suspect. Moreover, the reliability of the statements taken some hours after the incident with the aid of the interpreter are highly questionable. Furthermore, it would appear that those statements, which are clearly hearsay, were not admissible, if objected to, under either the excited utterance, present sense impression, or res ges-tae exceptions to the hearsay rule, especially since the State sought to introduce them through the person of Detective Snow who does not even speak Spanish. The fact that the appointed counsel for defendant did not raise this basic objection creates in my mind a grave question regarding adequate representation of the defendant.
It would appear, from my reading of the record, that the defendant was the “outsider” of the group; he alone, of the men, was not allowed to know what was going on in the bathroom; it was he who left early; and, according to Hernandez’s testimony and that of his wife, he was the only one of the men absent at the time of the shooting. In my opinion, the facts of the case strongly suggest that appellant was “framed.”
I also find it extremely peculiar that, with five alleged eye witnesses to the crime, the State was unable to produce even one of these “eye-witnesses” at trial. Cynthia Perez, an eighteen-year old with a new baby, claimed that her 32-year old husband and she “split-up” and she has no idea of his whereabouts. She related that the same condition existed between Victor Colon and his wife. And, she further testified that even though she had seen Juan Reyes about two weeks before the trial, she had no idea where he was living.
The record fails to reflect what efforts, if any, were taken by the State to locate the absent witnesses. I would think that in a case concerning a charge as grave as the one here, every effort would be made by the State to locate any alleged eyewitness. If this was done, a much stronger case could have been made by the State if these *1334 facts were recorded somewhere in the record.
In conclusion, after thoroughly reviewing the record, I cannot find that a rational trier of fact, viewing the evidence in light most favorable to the prosecution, could find beyond a reasonable doubt that Jose Hernandez shot Otto Rickli. I, therefore, respectfully dissent.